NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

PACIFIC ALLIANCE GROUP LIMITED, a Hong Kong Corporation,

    Plaintiff,

v.

PURE ENERGY CORPORATION, a Delaware Corporation; IRSHAD AHMED; SCOTT D. DUNLOP; and DOUGLAS W. DUNLOP,

    Defendants/ Third Party Plaintiffs,

v.

PIPER JAFFRAY, INC., a Delaware Corporation, and DAVID KOONTZ,

    Third Party Defendants.

CIVIL ACTION NO. 02-4216 (DRD)

OPINION

Appearances

WILENTZ, GOLDMAN, SPITZER, P.A.
Marvin J. Brauth, Esq.
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095-0958
    *Attorneys for Plaintiffs*

PORZIO, BROMBERG & NEWMAN, P.C.
Joseph Maddaloni, Jr., Esq.
100 Southgate Parkway
Morristown, New Jersey 07962-1997
    *Attorneys for Defendant/ Third Party Plaintiffs*

DRINKER, BIDDLE & REATH, LLP
Brian McDonough, Esq.
140 Broadway

39th Floor
New York, New York 10005
    *Attorneys for Third Part Defendants*


### *OPINION*

**DEBEVOISE, Senior District Judge**

    This suit arises out of a dispute concerning investments made by Pacific Alliance Group, Ltd. ("Plaintiff") in Pure Energy Corporation ("PEC"), that allegedly resulted in a loss to Plaintiff.[1] Plaintiff alleges that PEC issued a Private Placement Memorandum ("PPM") containing fraudulent statements which Plaintiff relied on before investing substantial sums of money in PEC. Following institution of this suit, PAG's claims against PEC were discharged in bankruptcy. The only remaining claims are those against the individual defendants for common law and securities law fraud and negligent misrepresentation. Defendants have joined third-party Defendants Piper Jaffray, Inc. ("Piper") and David Koontz ("Koontz") to the case (one of the creators of the PPM and a former director of PEC respectively). Plaintiff and the remaining Defendants Irshad Ahmed, Scott D. Dunlop, and Doulgas W. Dunlop, all argue that settlement discussions took place in October 2005 and that a settlement was agreed upon between those parties on November 8, 2005. However, a term of the agreement remains in contention. Plaintiff and Defendants agree that they entered into an agreement whereby Defendants would pay Plaintiff the sum of $250,000 in exchange for dismissal of the current action and an exchange of general releases by and between Plaintiff and Defendants. However, Plaintiff and Defendants

---

[1] A more detailed account of Plaintiff's factual allegations and legal claims appears in the court's August 10, 2004 opinion resolving defendants' motion to dismiss.

have both filed different motions to Enforce Settlement. Defendants ask the court to enforce the settlement without releasing the third-party defendants. Plaintiff argues that release of the third-party defendants should be enforced as part of the agreement. For the reasons explained below Defendants' motion will be granted. Plaintiff's motion will be denied.

## *FACTS*

On November 8, 2005, Plaintiff and Defendants reached an agreement wherein defendants would pay $250,000 to Plaintiff in exchange for the dismissal of this matter and a general release. Defendants also agreed to provide a general release to Plaintiff and dismiss their claims against the third party defendants. (Maddaloni Cert. ¶ 5; Brauth Aff. ¶ 6). Plaintiff then attempted to reduce this agreement to writing by drafting a copy of the Settlement Agreement for Defendants' review on November 17, 2005. (Maddaloni Cert. Ex. A). In the letter to Defendants' attorneys which accompanied the draft, counsel for Plaintiff stated "I would appreciate it if you would review these documents and give me your comments." (Maddaloni Cert. Ex. A). This draft contained the provisions the parties had agreed to (Defendants would pay Plaintiff the sum of $250,000 in exchange for dismissal of the current action, and an exchange of general releases by and between Plaintiff and Defendants) and an additional provision whereby the parties also agreed to release the third-party defendants from liability. (Maddaloni Cert. Ex. A). Defendants objected to the additional provision and returned a revised draft of the settlement agreement to Plaintiffs on November 28, 2005. (Maddaloni Cert. Ex. B). Defendants' revision deleted the provision for release of the third-party defendants, and added a confidentiality provision. In its letter to Plaintiff's counsel, Defendants' attorney stated "In our view, the third-party defendants should not be part of the agreement because the claims against

3

them are necessarily dismissed by virtue of the settlement between plaintiff and defendants."

(Maddaloni Cert. Ex. B).  On December 8, 2005, Plaintiff's counsel responded to Defendants stating that Plaintiff consented to the confidentiality provision; however, he believed that a mutual release of all claims and liability by and between defendants and third-party defendant David Koontz was a condition of the settlement.  (Maddaloni Cert. Ex. C).  On December 9, 2005, Defendants' attorney responded to this letter stating:

> "The settlement discussions were conducted by Mr. Maddaloni and Mr. Brauth.  During those conversations, Mr. Brauth pursued the dismissal of all claims in this matter against all parties, and Mr. Maddaloni agreed to dismiss defendants' claims in this case.  Mr. Maddaloni never agreed that the defendants would provide general releases to the third-party defendants... we will not agree to provide releases to the third-party defendants because they have not participated in the settlement discussions and have not provided consideration.  Piper Jaffray specifically refused our request[ ] to participate in the settlement.  The third-party defendants' dismissal from the litigation should satisfy them."
>
> (Maddaloni Cert. Ex. D).

On December 15, 2005, Defendants filed the present motion to enforce settlement without releasing the third-party defendants.  On December 27, 2005, Plaintiff filed its opposition and cross-motion to enforce the settlement releasing the third party defendants.  In the affidavit Plaintiff's counsel filed with its motion papers, he stated:

> "Ultimately, the parties reached agreement to resolve the matter in its entirety.  More specifically, it was agreed that the settlement would resolve all claims asserted by plaintiff, and that defendants likewise would not be proceeding with the claims they had against Piper Jaffray and Mr. Koontz." (Brauth Aff. ¶ 6).
>
> "Although the matter of releases was not specifically discussed during our settlement negotiations, defendants' position that they will not provide releases to Mr. Koontz and to Piper Jaffray is inconsistent with our agreement this matter was resolved in its entirety, and that defendants would not be

4

> proceeding further against either Mr. Koontz or Piper Jaffray. In the absence
> of a release, it is obvious that defendants would be free to assert other claims
> arising from this matter or otherwise against both of these parties. This is
> clearly not what was understood or contemplated on behalf of plaintiff..."
> (Brauth Aff. ¶ 8).

## *DISCUSSION*

There is a well-settled rule that the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally. Plymouth Mutual Life Ins. Co. v. Illinois Mid-Continent Life Ins. Co., 378 F.2d 389 (3rd Cir. 1967); Homestake-Sapin Partners v. united States, 375 F.2d 507, 511 (10th Cir. 1967); Mass. Casualty Ins. Co. v. Forman, 469 F.2d 259, 261 (5th Cir. 1972). Under New Jersey law, a settlement agreement between parties to a lawsuit is itself a contract, "separate and independent from the dispute giving rise to the lawsuit which is settled." Cooper-Jarrett, Inc. v. Cent. Transp., Inc., 726 F.2d 93, 96 (3d Cir. 1984). An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties. whether or not made in the presence of the court, and even in the absence of writing. Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970). Therefore, if the settlement agreement in the present case satisfies the standard for an otherwise acceptable contract, the settlement can be enforced.

Traditional contract law rules provide that a contract arises from the manifest intentions of the parties to engage in an offer and acceptance of sufficiently definite essential terms. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992); See also Friedman v. Tappan Development Corporation, 22 N.J. 523, 531 (1956). To be enforceable, a contract must also be accompanied by consideration. Friedman, 22 N.J. at 533. A fundamental tenet of contract law

holds that a contract consists of three elements: offer, acceptance and consideration.  In bilateral contracts or agreements, such as the one in the case at hand, where the parties make mutual promises to do some future act, "the consideration of the promise of one party is a promise on the part of the other." Id.  Additionally, there must be a "meeting of the minds" for each material term to an agreement.  Sampson v. Pierson, 140 N.J.Eq. 524 (1947); Hardy v. Hansen, 134 N.J.Eq. 176 (1943).  Where there is a misunderstanding between the parties pertaining to one of the material terms of an agreement, there is no meeting of the minds, and therefore no contract. Richardson v. Union Carbide Industrial Gases, Inc., 347 N.J. Super. 524, 533 (App. Div. 2002) (citing 2 Williston on Contracts § 6:17 (Lord ed., 4th ed.1991); See also Shapiro v. Solomon, 42 N.J. Super. 377, 385 (App. Div. 1956).

    In the present case, both sides agree that there was a settlement agreement in place after the conversation between the attorneys for Plaintiff and Defendants; however, they do not agree on what that agreement was. A close look at the affidavits submitted by counsel definitively ends this dispute.  Both counsel agreed to the following: (1) Defendants would pay $250,000 to Plaintiff in exchange for the dismissal of this matter and a general release; and (2) Defendants would provide a general release to Plaintiff and dismiss their claims against the third party defendants.  (Maddaloni Cert. ¶ 5; Brauth Aff. ¶ 6).  Both counsel agree that this was the only conversation that took place on November 8, 2005.  Therefore any additional terms cannot be included in this agreement.

    This agreement contained the requisite offer, acceptance, consideration, and a meeting of the minds on all material terms.  There was no specific mention of an exchange of release with the third-party defendants or any other terms.  What followed, starting with Plaintiff's letter of

6

November 17, 2005, was a subsequent negotiation and series of counter-offers (which included the confidentiality provision which was agreed to by both parties as well as additional proposal and rejections of the exchange of release provision) which did not affect the terms of this settlement agreement.  See Generally Excelsior Ins. Co. v. Pennsbury Pain Center, 975 F.Supp. 342, 350 (D.N.J. 1996).

Therefore, the court will enforce the settlement as originally agreed to on November 8, 2005.  Defendants will be ordered to pay $250,000 to Plaintiff in exchange for the dismissal of this matter and a general release, and Defendants will provide a general release to Plaintiff and dismiss their claims against the third party defendants.

### *CONCLUSION*

For all the reasons stated above, Defendant's motion to enforce the settlement will be granted, and Plaintiff's motion to enforce the settlement will be denied.

    /s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

January 17, 2006